UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AINSWORTH C. JACKSON, :

  Plaintiff,  :

       :

  v.     :

       : C.A. No. 07-203 (RWR)

BUREAU OF PRISONS, et. al., :

  Defendants.  :

. . . . . . . . . . . . . . . . . . . . . . . . . :

RECEIVED

APR 2 3 2007

Chambers of Judge Roberts

**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS MOTION
TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT, AND MOTION
FOR A PRELIMINARY INJUNCTION AND AFFIDAVIT IN SUPPORT**

**PLEASE TAKE NOTICE,** that plaintiff, Ainsworth C. Jackson,

pro se, opposes defendants "Motion To Dismiss, or For Summary

Judgment and moves this honorable court to deny defendants motion

and grant plaintiff a "Preliminary Injunction and Temporary Re-

straining Order" which enjoins the defendants in removing this

"False & Erroneous" Information, and grounds states the following.

Pursuant to the Privacy Act, an agency must maintain all records

which are used by the agency in making any determination about any

individual with such accuracy, relevance, timeliness, and complete-

nes as to assure fairness to the individual in the determination.

5 U.S.C. § 552a(e)(5).  An individual may bring suit against an agency

which fails to meet this standard.  See 5 U.S.C. § 552a(g)(1)(C). In

order to recover monetary damages under the Privacy Act, a plaintiff

must assert that an agency failed to maintain accurate records, that

an 'adverse' determination was made respecting plaintiff.  That is,

plaintiff must allege inaccurate records, agency intent, causation,

and an "adverse determination. <u>Toolasprashad</u> v. <u>Bureau of Prisons</u>, 286 F.3d 576, 583 (D.C. Cir. 2002)(quoting 5 U.S.C. § 552a(g)(1) (C).

Plaintiff has the burden of proving that the agencies' actions in violating the Privacy Act were intentional or willful. <u>Albright</u> v. <u>United States</u>, 732 F.2d 181, 189 (D.C. Cir. 1984); 5 U.S.C. § 552a(g)(4). To meet this burden, plaintiff "must prove that the offending agency acted" without grounds for believing [its actions] lawful or that it 'flagrantly disregarded' the rights guaranteed under the Privacy Act. <u>Laningham</u> v. <u>United States Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

The U.S. Parole Commission promulgated a rule to exempt its system of inmate records from the amendment provisions of the Privacy Act, 28 C.F.R. § 16.85 (exempting system from 5 U.S.C. § 552a(d); See <u>Sellers</u> v. <u>BOP</u>, 959 F.2d 307, 309 (D.C. Cir. 1992), and a rule providing that a PSi is not subject to correction or amendment, 28 C.F.R. § 16.51(c). The Commission, **however**, has not exempted the system from subsection (e)(5). If an agency has no subsection (d) duty to amend, upon request, an allegedly in-accurate record, it is not clear what residual duty subsection (e)(5) imposes when an individual challenges the accuracy of a record. Does the agency nevertheless have to amend or expunge the record on the individual's request? Or does the agency merely have to address the accuracy of the record at some point before using it to make a determination of consequence to the individual?

-2-

Sellers is not entirely clear on this point' the language of sub-section (e)(5), however, suggests the latter course.  See OMB Privacy Act Guidelines, 40 Fed. Reg. 28, 948, 28, 964 (1975)(sub-section (e)(5) "places the emphasis on assuring the quality of the record in terms of the use of the record in making decisions affecting the rights, benefits, entitlements, or opportunities . . . . of the individual"); cf., Buxton v. United States Parole Commission, 844 F. Supp. 642, 644 (D. Or. 1994).

## I.  DEFENDANT U.S. PAROLE COMMISSION HAS INTENTIONALLY AND WILL-FULLY FAILED TO MAINTAIN ACCURATE RECORDS ON PLAINTIFF PUR-SUANT TO SUBSECTION (e)(5) OF THE PRIVACY ACT.

Plaintiff will show that defendant, U.S. Parole Commission has intentionally and willfully failed to maintain accurate and correct records on plaintiff, and that consequently an adverse determination was made respecting plaintiff.

1.  The defendant U.S. Parole Commission has intentionally and willfully maintained inaccurate records on plaintiff by creating "False Information" and "inventing two (2) pseudo charges, one for "Fraud, and the other for "Making A False Statement, and that plaintiff has 12 prior convictions for forgery, fraud or larceny type crimes." (See Defendants Exhibit #25, page 4)

2.  The defendant U.S. Parole Commission has intentionally and willfully maintained inaccurate records on plaintiff when, after plaintiff's parole revocation hearing on April 28, 2005, they further placed "False Information" in plaintiff's file by way of the (See Defendants Exhibit #25, pages 3 & 4) "Revocation Hearing

-3-

Summary and never gave plaintiff the opportunity to review or even dispute the following information: (1) On page #3, of defendants Exhibit #25, it was alleged that plaintiff made the following statement: **"she's dead isn't she;"** making reference to plaintiff's deceased mother; and (2) on page #4, the Commission states the following: **"he has an extensive history of bank fraud as noted in the PHA: he now has 12 convictions for crimes that began in 1972. His 1996 violation behavior and "new offense" involved a "check typed scheme put at rest the $750,000 of bank money.**

All of the above information is **"false"** and the alleged statement that plaintiff was to have made about his mother, **"she's dead isn't she,"** is an outright **"lie"** and fabricated because plaintiff never made such a statement. Although, the statement in the RHS that: **"His 1996 violation behavior and new offense involved in a "check typed scheme put at rest the $750,000 of bank money"** clearly contradicts defendants denial statement on page 11, ¶3 of their "Motion To Dismiss" that plaintiff had not been convicted of a **"new offense,"** because defendants state the following at page 11, ¶3: **"The Parole Commission, rather, made an independent finding, based upon the preponderance of the evidence, that plaintiff had committed the offense."** This statement by defendants emphatically confirms what plaintiff has alleged, that defendant U.S. Parole Commission had actually created and invented the charges of **"Fraud & Making A False Statement."** The Commission's action are clearly unlawful.

Plaintiff asserts that the determination of the proper range of punishment which may be levied in regard to a class of crimes,

-4-

like the determination of what is criminal, is within the ambit
of the legislative prerogative.  "Because of the seriousness of
criminal penalties," they should in general attach only after the
body responsible for forming our laws in the first instance has
established that such penalties are appropriate.  Criminal sanctions
serve an amalgam of social goals, and their severity is best deter-
mined by a body which can respond to the balance of such goals as
prescribed by the popular will.  Whether or not federal criminal
penalties should be redrafted it is of dubious constitutional
propriety to delegate so crucial a legislative function to a non-
representative body with no standards other than a direction that
the results "not depreciate the seriousness of the offense" and
"be consistent with the public welfare.

    District courts may exercise their discretion in individual
cases largely untrammeled by appellate review.  They are not free,
however, to eschew the task they are called upon to perform
by adopting rules to fix given punishments on given classes of
offenders.  Such a position by the sentencing court would consti-
tute an abuse of discretion calling for a vacation of the sentenc
imposed.  This is exactly what the defendant, U.S. Parole Commission
has done in the present case by inventing the charges of **"Making
A False Statement"** and **"Fraud."**  They have embarked alone, on a
task which is the traditional province of the judiciary.  Insofar
as the Commission has created these "criminal offenses," and have
undertaken the functions which are usually discharged by the legis-
lature.  Yet the Commission lacks the institutional safeguards of

-5-

either the courts or the Congress.  It has neither judicial in-
dependence and allegiance to the ideal of dispassionate and
reasoned decisions nor legislative responsiveness to the popular
will.  The Commission then begins to perform functions which are
within the traditional province of the judiciary.  At least where
the prior determination of the judicial branch are given no weight,
therefore, serious questions are raised whether the constitutional
protections provided by an independent judiciary are being under-
mined.

3.  Plaintiff asserts that defendant U.S. Parole Commission intent-
ionally and willfully failed to maintain accurate records regarding
the challenged information because defendants Exhibit #2, pages
2 & 3 show that plaintiff does not have 12 prior convictions for
forgery, fraud and larceny type convictions, as well as it shows
that plaintiff does not have 6 prior commitments of thirty days
or more.

4.  Plaintiff asserts that none of the above challenged "false in-
formation is contained in plaintiff's PSI, or was it contributed
by any local, state, or federal law enforcement agencies.  The 12
prior convictions for forgery, fraud, or larceny type crimes, and
6 prior commitments for 30 days or more first appeared on plain-
tiff's "Notice of Action" dated (See Defendants Exhibit #19) June
8, 2000, and again appearing on a second "Notice of Action (See
Defendants Exhibit #26) dated May 19, 2005.

## ARGUMENT

The Privacy Act authorizes agencies to exempt from its access
and amendment provisions all systems of records consisting of

"investigatory material compiled for law enforcement purposes."
Subsection (j)(2) empowers law enforcement agencies to exempt
from subsection (d) certain types of criminal records systems,
including those consisting of "information compiled for the
purpose of a criminal investigation . . . and associated with an
identifiable individual," 5 U.S.C. § 552a(j)(2)(B)(1988), while
section (k)(2) permits any agency to exempt from subsection (d)
any other records system containing "investigatory material com-
piled for law enforcement purposes," 5 U.S.C. § 552a(k)(2)(1988).

Although both subsections (j) and (k) refer to "systems of
records, the U.S. Parole Commission's exemption regulation, 28
C.F.R. § 16.85(a)(2), respecting its CRS, does not remove that
entire filing system from the requirements of the Act; rather,
CRS documents qualify for exemption only if they constitute law
enforcement records within the meaning of the statute. Vymetalik
v. F.B.I., 785 F.2d 1090, 1095 (D.C. Cir. 1986). Accordingly,
the U.S. Parole Commission and the Bureau of Prisons bear the
burden of demonstrating a law enforcement purpose for each record
as to which they have claimed exemption in this case.

In making this determination, this court should borrow the
test for "law enforcement purpose" that was devised in Pratt v.
Webster, 673 F.2d 408, 420 (D.C. Cir. 1982), to evaluate the
applicability of these exemption.

Under the Pratt Test, records kept by a law enforcement agency
must meet two criterias in order to qualify as law enforcement

-7-

records.  First, "the agency's investigatory activities that give
rise to the documents sought must be related to the enforcement
of federal laws or to the maintenance of national security."
Pratt, 673 F.2d at 420.  An agency does not satisfy this require-
ment when "merely engaging in a general monitoring of private
individuals activities;" rather, the agency must demonstrate a
connection of a "possible security risk or violation of federal
law."  Id., cf., Shaw v. FBI, 749 F.2d 58, 64-65 (D.C. Cir. 1984).
Second, the"nexus between the investigation and one of the agency's
law enforcement duties must be based on information sufficient to
support at least 'a colorable claim' of its rationality.  The
Privacy Act exempts "reports identifiable to an individual compiled
at any stage of the process of enforcement of the criminal laws
from arrest or indictment through release from supervision. Id.
§ 552a(j)(2)(C).

Neither the U.S. Parole Commission or the Federal Bureau of
Prisons meet the two criteria test setforth in the Pratt Test,
because none of the reports being challenged by plaintiff can be
considered as dealing with investigatory activities.

The proper analysis of recompiled records under the Privacy
Act requires an additional layer of analysis.  In creating sub-
section (j) and (k) of the Privacy Act, Congress did not delineate
the agency interests justifying exemption as it had in the FOIA.
Instead, with one exception, Congress granted agencies broad dis-
cretion to exempt all law enforcement records systems from the
Act's access and amendment provisions, provided that the agencies

-8-

promulgate their exemption rules i accordance with the rulemaking

provisions of the APA, and provide in those rules statements of

the reasons for the exemptions.   Thus, in determining whether

treatment of the U.S. Parole Commission documents as a law enforce-

ment record would promote the purposes underlying the law enforce-

ment exemption, we must look to the reasons that the U.S. Parole

Commission itself has given for promulgating that exemption.   The

Commission has promulgated rules implementing that exemption in

28 C.F.R. § 16.85(b)(3), (9)(1984):

> "(b) Exemptions from the particular subsections are justified
> for the following reasons:
>
> (3) From subsection (d) because this is essential to protect
> internal processes by which Commission personnel are able to
> formulate decisions and policies with regard to federal pri-
> soners and persons under supervision, to prevent disclosures
> of information to federal inmates or persons on supervision
> that would jeopardize legitimate correctional interests of
> security, custody, supervision, or rehabilitation, to permit
> receipt of relevant information from other federal agencies,
> state and local law enforcement agencies, and federal and state
> probation and judicial offices, to allow private citizens to
> express freely their opinions for or against parole, to allow
> relevant criminal history type information of co-defendants
> to be kept in files, to allow medical, psychiatric and socio-
> logical material to be available to professional staff, and
> to allow a candid process of fact selection, opinion formu-
> lation, evaluation and recommendation to be continued by pro-
> fessional staff.   The legal files contain case development
> material and, in addition to other reasons, should be exempt
> under the attorney-client privilege.   Each labor or pension
> applicant has had served upon him the material in his file
> which he did not prepare and may see his own file at any time.
>
> (9)  From subsection (g) because exemption from the provisions
> of subsection (d) will render the provisions on suits to en-
> force (d) inapplicable."

After reviewing 28 C.F.R. § 16.85(b)(3), (9)(1984, there is

nothing remotely contained in this section that rationally exempts

the challenged reports by plaintiff, for these reports are not

contained in plaintiff's PSI, nor were they contributed by or contained in any local, state or federal law enforcement agencies. The alleged 12 prior convictions for forgery, fraud or larceny type crimes first appeared on plaintiff's "Notice of Action" dated (See Defendants Exhibit #19) June 8, 2000, and once again appearing on a second "Notice of Action" dated (See Defendants Exhibit #26) May 19, 2005.

Plaintiff asserts that these reports, "Fraud, Making A False Statement and 12 prior convictions for forgery, fraud, or larceny type crimes" are the sole invention and product of defendant U.S. Parole Commission. None of these reports qualify as law enforcement records consisting of "information compiled for the purpose of a criminal investigation and therefore, these false reports are not exempt pursuant to 5 U.S.C. § 552a(j)(2). Furthermore, these false reports were never classified or justified as being exempted.

The problem of assuring that allegations of exempt status are adequately justified is the most obvious and most easily remedied flaw in current procedures. It may be corrected by assuring government agencies that courts will simply no longer accept conclusory and generalized allegations of exemptions, such as the defendants are attempting to treat this Court, but should require a relatively detailed analysis in manageable segments. The need for adquate specificity is closely related to assuring a proper justification by the governmental agency. Sterling Drug, Inc. v. F.T.C., 146 U.S.App.D.C. 237, 450 F.2d 698 (1971); Vaugh v. Rosen,

-10-

157 U.S.App.D.C. 340, 484 F.2d 820 (1973).  In a large report it is vital that the agency specify in detail which portions of the report are allegedly exempt.  This could be achieved by formulating a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the report.  Such an indexing system had been established as a result of the U.S. Court of Appeals decision in **Vaugh v. Rosen**, 157 U.S.App.D.C. 340 (1973), which in essence, created what is now called the "**Vaugh Index**."

Since the burden of determining the justifiability of a government claim of exemption currently falls on the court system, there is an innate impetus that encourages agencies to automatically claim the broadest possible grounds for exemptions for the greatest amount of reports as has been illustrated by this case.

What the defendants have done in the present case is simply point to selected, clearly exempt portions, ignore the amendable "false reports" in an attempt to persuade this Court that the entire mass is exempt, when in actuality, they are not.  Thus, as a tactical matter, it is conceivable that the defendants are attempting to gain an advantage by claiming overbroad exemptions to false reports that are not truly exempt!

Had the defendants employed the **Vaugh Index**" in this case, the reports which are in dispute could have easily been identified as whether they were properly exempted for the purposes which have been claimed by the defendants, as well as an explanation for

-11-

the exemption been supplied. Therefore, in light of the foregoing
discussion, it is evident that the disputed reports which have
been invented by defendant U.S. Parole Commission are not: (1)
reports that qualify as law enforcement records consisting of
"information compiled for the purpose of a criminal investigation;
and (2) these false reports were never classified or justified
as being exempt, which leaves this court with only one course in
this matter, to order the defendants to **"Removes"** these false and
erroneous reports from plaintiff's records.

II. **THE PAROLE COMMISSION HAS NOT COMPILED WITH 5 U.S.C. § 552a
(e)(5) BY PROVIDING PLAINITIFF WITH TWO PAROLE REVOCATION
HEARING, BECAUSE AT THESE HEARINGS, PLAINTIFF WAS NEVER
GIVEN A FAIR OPPORTUNITY TO PRESENT HIS CONTENTIONS ABOUT
THE DOCUMENTS IN HIS FILE.**

The defendant U.S. Parole Commission, alleges that because
plaintiff had two (2) parole revocation hearings, they have com-
piled with 5 U.S.C. § 552a(e)(5) of the Privacy Act, i.e., a fair
opportunity to present his contentions about the documents in his
file. To the contrary, both of these parole revocation hearings
were constitutionally infirm, and lacking in "due process" because:
(1) at plaintiff's first revocation hearing that was held in December
of 1999, the Commission never prepared a "preliminary guideline
assessment for his review prior to plaintiff's in-person hearing"
(The preliminary assessment, then, serves to provide the inmate
with notice, enabling him to review the record for error and pre-
pare for his hearing); nor did plaintiff see any information in his
parole file that he had reviewed before his in-person hearing that
stated that plaintiff had twelve (12) prior convictions for forgery,

-12-

fraud, or larceny type crimes, now was the subject of plaintiff
12 prior convictions for forgery, fraud, or larceny type crimes
(See Defendants Exhibit #15) ever discussed at this hearing with
plaintiff by the Parole Commission Examiner; (2) at plaintiff's
second parole revocation hearing held on April 28, 2005, the U.S.
Parole Commission violated its own regulation contained in § 2.55,
by failing to allow plaintiff to review his parole file prior to
the in-person revocation hearing held on April 28, 2005, nor did
the U.S. Parole Commission prepare a "preliminary guideline assess-
ment" to enable plaintiff to review the record for errors and allow
plaintiff to prepare for the in-person hearing.  Furthermore, the
topic of plaintiff having 12 prior convictions for forgery, fraud,
and larceny type crimes was never discussed at this hearing as
well; and (3) the Commission used false and erroneous information
to render their decision to revoke plaintiff's parole and continue
him to expiration of the sentence.

Plaintiff asserts that he was not afforded a fair opportunity
to present his contentions about the documents in his file because
plaintiff never knew about them until after the parole revocation
hearings by way of the "Notice of Actions," and therefore, the
U.S. Parole Commission failed to comply with 5 U.S.C. § 552a(e)(5).
Furthermore, plaintiff did not have a parole revocation hearing on
April 28, 2005, but was put on trial by the U.S. Parole Commission
for the fabricated, invented pseudo charges of "Fraud and Making
A False Statement."

There is no rational basis in the record for the Commission's

finding of "Fraud or Making A False Statement" by the preponderance of evidence were there is nothing tangible that the U.S. Parole Commission could even consider these bare allegations as new criminal conduct, when plaintiff was never arrested, charged, indicted or convicted of these alleged charges.  The Commission had no evidence before it which rationally embodied its statement of reasons that plaintiff had committed these alleged charges.  <u>Zannino</u> v. <u>Arnold</u>, 531 F.2d 687; <u>United States ex rel. Farsese</u>, v. <u>Luther</u>, 953 F.2d 49; <u>Gambino</u> v. <u>Morris</u>, 134 F.3d 156.  The U.S. Parole Commission's "Parole Hearing Summary" is neither sufficiently reliable nor sufficiently corroborated to support the Commission's findings.  The only evidence that the Commission had before it was testimony of plaintiff's parole officer, and all he testified to was that plaintiff had "<u>overdrawn his Business Checking Account</u> (See Defendants Exhibit #25, page 3).  This blatant significance of misinformation justifies this court to require the defendant, U.S. Parole Commission to verify this information.  <u>United States</u> v. <u>Borello</u>, 766 F.2d 46, (2d Cir. 1985); <u>Misasi</u> v. <u>U.S. Parole Commission</u>, 835 F.2d 754 (10th Cir. 1987).

In <u>Townsend</u> v. <u>Burke</u>, 334 U.S. 736, 68 S.Ct. 1252, the Supreme Court stated that:

> "**where defendant was sentenced on basis of assumptions concerning his criminal record which were materially untrue, and that such result, whether caused by carelessness or design, was inconsistent with due process, and that therefore the conviction could not stand.**"

The Commission may not base its judgment as to parole on an inaccurate factual predicate.  <u>Campbell</u> v. <u>U.S. Parole Commission</u>, 704 F.2d at 109.

-14-

In the typical "Privacy Act" case, it is feasible, necessary, and proper for the agency and, in turn, the district court to determine whether each filed item of information is accurate.  See Doe v. United States, 821 F.2d 694, at 699.  This is because in the "typical" case the "truth" is "clearly provable" or "relatively easily ascertainable."  Sellers v. Bureau of Prisons, 959 F.2d at 311.  On the other hand, in the "atypical case," where the challenged information is not capable of being verified, neither the agency nor the court on de novo review is required to "find and record the truth."  Instead, it suffices to "adjust the file equitably to reveal actual uncertainty.  This case is a "typical case" and the "truth of this information is clearly provable."  Therefore, the defendants in this case are without excuse or defense.

The defendants, however, have not argued that this case is an "atypical case" and therefore, it must be assumed without so concluding that the defendants failed to maintain plaintiff's records with sufficient accuracy and because of that, the court can now turn to whether plaintiff has been aggrieved by an adverse determination by reference of Sellers v. Bureau of Prisons, 959 F.2d 307.

Sellers involved an inmate's challenge to the accuracy of a PSI.  The PSI referred to a bank robbery charge that he claimed had been dismissed.  He presented evidence showing that the probation office had erroneously submitted the PSI to the Commission and had asked the Commission to return it and not consider it.  959 F.2d at 308.  The Commission failed to return it and used it in denying him parole.  The Court concluded that the case was a "typical" Privacy Act case because whether the PSI had been improperly sub-

-15-

mitted to the Commission "was relatively easily ascertainable"
and capable of being verified. Id. at 311-12. Consequently, the
Commission, having apparently made no effort to address his challenge
before relying on the PSI to deny him parole, did not satisfy the
Privacy Act merely by noting in his file that he disputed the
accuracy of the PSI. Id. at 312.

In the present case, the challenged information, "Fraud,
**Making A False Statement, 12 prior convictions for forgery, fraud
and larceny type crimes and 6 prior committments of 30 days or more,"**
cannot be found in plaintiff's PSI, nor any local, state and fed-
eral law enforcement agencies files, because this **"false information"**
is the sole invention and creation of the U.S. Parole Commission.
Plaintiff doesn't even have a total of 12 criminal convictions, let
alone 12 prior convictions for forgery, fraud and larceny type
crimes, and this can be verified by plaintiff's PSI, local, state
and federal law enforcement files, which was easily ascertainable
and could have been verified by defendant U.S. Parole Commission
since defendant (See Defendants Exhibit #2, pages 2 & 3) U.S. Parole
Commission had the correct information contained its own files and
records. The defendant U.S. Parole Commission did not have to
search very far in order for them to find out the **"truth."**

Plaintiff has had two (2) in-person parole revocation hearings
and his parole was revoked at both of these parole hearings based
on the use of this challenged **"false information"** that plaintiff
had absolutely no opportunity to review or even dispute, because

defendant U.S. Parole Commission never apprised plaintiff that
this information even existed nor did they supply this information
to plaintiff as their own regulations require, thus, an unfavor-
able decision was rendered at both these hearings from the use
of this **"false information"** which constitutes the **"adverse deter-
mination"** which affected plaintiff's rights, benefits, entitlements
and opporunities. Deters v. U.S. Parole Commission, 85 F.3d 655

Plaintiff asserts that the violation here by defendants is
so patently egregious and unlawful because these defendants knew
perfectly well that the conduct they were undertaking was unlawful.
Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir.
1987).    An agency acts in an "intentional or willful" manner
"either by committing the act without grounds for believing it to
be lawful, or by flagrantly disregarding others rights under the
Privacy Act."  Albright v. United States, 732 F.2d 181, 189 (D.C.
Cir. 1984).

Defendant U.S. Parole Commission cannot now claim that they
were unaware that their actions were unlawful because their own
files and records contradict their denials, therefore, in light of
these facts, defendant USPC has not satisfied section (e)(5) of the
Privacy Act in maintaining accurate records on plaintiff, nor
providing plaintiff with a parole revocation hearing that could
be considered a fair opportunity to present his contentions about
documents in his file.

III.  **PLAINTIFF'S CLAIM SHOULD NOT BE PRESENTED IN A PETITION
      FOR A WRIT OF HABEAS CORPUS, BUT UNDER THE PRIVACY ACT**

In Preiser v. Rodriguez, 411 U.S. 475, 487-88 (1973), state
prisoners brought suit seeking an injunction restoring "good time"

-17-

credits that they calimed were unconstitutionally taken from them.
The Supreme Court held that since the prisoners were challenging
the fact or duration of their imprisonments, § 1983 was unavail-
able, and their sole federal remedy was by habeas corpus.  The
Preiser opinion rested on two grounds.  First, the Court noted
that the interest in federal-state comity weighed against the
advisability of allowing state prisoners to bypass the exhaustion
requirement of the state habeas corpus statute.  Second, the court
stated that the more specific provisions of the habeas corpus act
should be read to modify the general cause of action granted by
§ 1983.

None of these considerations is applicable here.  Congress
expressly contemplated declaratory actions to challenge the pro-
visions of the federal parole guidelines.  18 U.S.C. § 4218(c)
(1976) declares that Parole Commission actions, except for in-
dividual parole decisions, are to be reviewable under the Adminis-
trative Procedure Act.  The legislative history of § 4218(c)
states, inter alia:

> "This section brings the Commission rule-making process
> within the coverage of the Administrative Procedure Act
> review procedures.  In this regard, the Conferees recognize
> the principles established in Pickus v. United States,
> 165 U.S.App.D.C.  284, 507 F.2d 1107 (1974).

Pickus v. U.S. Parole Board, entailed a challenge by prisoners
to parole guidelines brought as an action for declaratory judgment
under the APA.  It appears that Congress in citing Pickus clearly
evinced an intent to allow suits like the one before this court

-18-

by way of an action for declaratory judgment. Furthermore, this

court has jurisdiction under the mandate of § 10(a) of the Act,

5 U.S.C. § 702, that:

> "a person . . adversely affected or aggrieved by agency
> action . . . . is entitled to judicial review thereof; the
> provision of Section 10(b), 5 U.S.C. § 703, that the form
> of proceeding for judicial review is . . . any applicable
> form of legal action, including actions for declaratory judgment
> or writs of prohibitory or mandatory injunction, in a court of
> competent jurisdiction;" and the requirement of Section 10(e)
> 5 U.S.C. § 706, that the "reviewing court shall . . . (2)
> hold unlawful and set aside agency action, findings and con-
> clusions found to be . . . (D) without observance of pro-
> cedure required by law."

The defendants allege that plaintiff is challenging the

denial of parole, to the contrary, plaintiff is not challenging

the denial of parole, but is challenging the agency's non-compliance

with accurate record keeping requirement contained in 5 U.S.C.

§ 552a(e)(5), and is seeking damages for the agency's failure

to maintain accurate records. The justiciability of such complaint

depends upon Section 10, particularly subsection (e), of the Act,

not the discretionary character of the Commission's determination

as to when parole shall be granted.

Although the complaint did not specifically ask for a de-

claration that the procedures used by the Commission in claiming

exemption for the challenged information were invalid, the general

prayer for necessary, just, and proper relief, coupled with the

above mentioned focusing of the parties' attention upon their

basic controversy about the rules and procedures used by the U.S.

Parole Commission in claiming exemption validity, justifies the

district court's adjudication of these issues.

Plaintiff asserts that the only benefits that a victory against the U.S. Parole Commission would provide, is the possibility of monetary damages, and the removal of this "False Information" out of his file. If plaintiff wins, it will in no way guarantee parole or necessarily shorten plaintiff's prison sentence by one single day. The Parole Commission will still have the authority to revoke plaintiff's parole on the basis of any of the grounds presently available to it in evaluating such request. Because plaintiff's challenge against the U.S. Parole Commission does not imply the invalidity of his conviction nor his continued confinement, plaintiff's challenge is therefore properly brought before this court under the provisions of the Privacy Act's subsection (e)(5).

## CONCLUSION

For the reasons stated and set forth above, plaintiff's complaint under the Privacy Act should be granted and defendants "Motion To Dismiss and/or for Summary Judgment" should be denied.

## PRAYER FOR RELIEF

Plaintiff prays that this honorable court enters a declaratory judgment against the defendants that: (1) they have failed to "maintain correct and accurate records pursuant to subsection (e)(5) of the Privacy Act on plaintiff, that they did so "intentionally or willfully," and consequently, that an "adverse determination" was made respecting plaintiff; (2) that this court enters a "Preliminary Injunction and Temporary Restraining Order" which

-20-

enjoins these defendants, their agents, officers or employees into removing this **"False Information"** that is contained in plaintiff's file and further enjoins them from distributing this **"False Information"** to any other local, state or federal law enforcement agencies; (3) that the defendants be enjoined into verifying all of the challenged information as being properly exempted, and to identify where such information was collected from, i.e., local, state or federal law enforcement agencies; and (4) that this court award monetary damages in the amount it deems appropriate and just.

Respectfully Submitted,

Ainsworth C. Jackson
Reg. No. 19728-101
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Motion In Opposition To Defendants Motion To Dismiss and Affidavit In Support" has been mailed to Alexander D. Dhoaibi, Assistant U.S. Attorney, 501 Third Street, N.W., Room E-4218, Washington, D.C. 20530 this 17th day of April 2007.

Ainsworth C. Jackson

-21-

offered by the prisoner." See House Conference Report No. 94-838, Joint Explanatory Statement of the Committee of Conference at page 21, reprinted in 1976 U.S.Code Cong. & Ad. News at 353 (1976). The inmate is given advance opportunity to review the documents the Commission intends to rely upon, 18 U.S.C. § 4208, and the opportunity to challenge the information contained therein at the hearing. 28 C.F.R. §2.19(c). By conducting its parole hearings according to the procedures mandated by Congress at 18 U.S.C. § 4208, the Parole Commission automatically complies with §552a(e)(5) of the Privacy Act. See Buxton, 844 F.Supp. at 644. Therefore, the section 552a(e)(5) "fairness" standard was satisfied. "Willful and intentional" unfairness making the agency liable for damages under the Privacy Act section (g) would be provable only if plaintiff could show, for example, that, under (e)(5), the Commission made parole decisions without any attempt to hold a hearing and consider his arguments as to the accuracy of the information in his file.

In this case, plaintiff has received several parole revocation hearings. Additionally, plaintiff had an opportunity to appeal his decisions to the Commission's National Appeals Board and has specifically raised the issues that he has raised in this litigation. Plaintiff has had ample opportunity to rebut the information in the record. Therefore, plaintiff's claim under the Privacy Act should be dismissed for failure to state a claim.

## II.    There is no merit to plaintiff's claim that the Parole Commission has asserted that he had been convicted of fraud or making a false statement.

There is no merit to plaintiff's claim that the Commission found that he had been convicted of the offense of making a false statement. The Parole Commission, rather, made an independent finding, based upon the preponderance of the evidence, that plaintiff had committed

*This statement is contradicted by defendants Exhibit # 25, page 3 & page 4.*

-11-

the offense. See Exhibit 26. The Parole Commission's regulations provide that new criminal

conduct may be determined by a new federal, state or local conviction, or by an independent

finding by the Commission. See 28 C.F.R. § 2.21(a)(2). Any dispute as to the accuracy of

information presented to the Commission is to be resolved based upon the preponderance of the

evidence. See 28 C.F.R. § 2.19(c). In plaintiff's case, the Commission found that the testimony

and supporting documents provided by the U.S. Probation Officer at plaintiff's revocation

hearing was more convincing than plaintiff's testimony.

## **Conclusion**

For the reasons set forth above, petitioner's complaint under the Privacy Act should be
dismissed.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
501 Third Street, N.W., Rm E-4218
Washington, D.C. 20530
(202) 514-7236

-12-

### PREHEARING ASSESSMENT

Institution:  Oxford
                        Mixed U.S./DC Code

Name:  JACKSON, Ainsworth Charles    Reg. No.:  19728-101
Date of birth:  05-13-52             Months in custody: 19 as of 7/18/91
Sentence(s) length/type:  6 years Reg. Adult
DC Superior Court Sentences 2 to 6 years for Uttering and Forgery and 4
months to one year for Bail Reform.
Parole eligibility date:  11/1/93    TWO THIRDS       Date: 12/18/93
(Parole eligibility on the 6 year Federal Sentence is 12-18-91)
Statutory Release Date:  9-10-98
Detainer:  no
Fines/restitution:  $100.00 felony assessment & $70.00 Court Cost.
Special Assessment:
Reviewer:  MILLS                     Date:  6/21/91
************************************************************************

Please note the panel should also review the remarks at the end of the BP5
which is dated 3-28-91 that will discuss parole eligibility and other
issues and appears there have been some decisions and the computations
were prepared by the DC Department of Corrections.  It also points out
that the Two Thirds Date on above relates only to the six year federal
regular adult sentence.

## I.  PRESENT OFFENSE:

(a)  Prisoner was convicted by plea in the District of Columbia Superior
Court on Docket No. F-6422-83 of Uttering and Forgery.  Subject received a
two to six year sentence.

DC Superior Court convicted of the Bail Reform Act and received a sentence
of 4 months - 1 year to be served consecutive.

Western District of North Carolina Case No. CR-88-167-01 convicted of Bank
Fraud and Causing an Act To Be Done.  Received a federal term 6 years.
All above are consecutive to each other with total sentence then of the
thirteen years overall.

(b)  Offense behaviors involve the following:  Please note the offenses
will be discussed as they occurred:

1.  DC Superior Court Case F-6422-83.  On 11-3-83 when a Superior
Court Bench Warrant was being executed a brown wallet containing a DC
drivers permit in the name of Lawrenzol Curry was found.  It bore the
photograph of a black male.  There were numerous credit cards in the same
name, credit card receipts for purchases made using the cards, driver's
permit was a forgery.  Also above subject, during the execution of
search warrant, was found and it was his picture that was on the forged
driver's permit.  Also seized during the execution of the warrant was a
photograph identification card manufacturing devise of the type used to
manufacture the forged drivers license.  The Assistant U. S. Attorney says
that the above subject was responsible for forgery of numerous credit
cards, drivers licenses, bank loans and other documents that would allow
access to financial gains.  The AUSA said that the remaining counts in
this charge were to be dismissed on the date of the sentencing.




JACKSON, Ainsworth Charles    19728-101
PREHEARING ASSESSMENT
Page 2

DC Superior Court Case F-6612-88. The charge was that on or about September 30, 1986, in District of Columbia the above subject under the name of George Jackson, who had been released under the provisions of appeal or pending disposition in Case # F-6422-83, failed to appear as required. Subjects response in the charge and his version was he forgot to appear in court on September 30, 1986.

Federal Case out of the Western District of North Carolina Docket # C CR 88-167-01. Subject convicted of Bank Fraud and Causing An Act To Be Done. The official version of the offense indicated that from a time in June of 1987 through sometime in July of 1987 in North Carolina subject was involved in a scheme to defraud federally insured banks. Subjects scheme included entering banks, opening a Corporate Account at the First National Bank, Depositing checks on bad checking accounts with insufficient funds. He fraudulently obtained two First Union National Bank Official checks totaling $16,167.59. In addition, during the same time frame and using the same scheme he opened a Corporate Checking Account with N. C. N. Bank of Charlotte, North Carolina, using an alias. He deposited almost $47,000 in invalid and bogus checks. He then purchased an Official Check in the amount of $9,765.75. He took that official check and purchased $9,100.00 in American Express Travelers Checks with the balance in cash from a Savings and Loan.

Information indicated that in order to accomplish this scheme he presented fictitious corporate resolutions to bank officials at each institution. Information also states that beginning July 21, 1987 he started making deposits into each Corporate Account using official checks, checks drawn on other open accounts and worthless checks drawn on additional fictitious accounts opened at banks in Tennessee and South Carolina. As a result of the fraudulent scheme subject passed worthless checks totaling about $118,326.69. That's a conservative estimate.

The summary them indicates that bottom line in the charges for which subject was convicted was that the First National Bank and NCNB Bank suffered losses of $17,754.91 and $39,191.18. Total loss is approximately $51,144.

Guideline Information For The Federal Offense. It should be noted that according to our policies and procedures calls for determining guidelines in a decision on the Federal Case and then application guidelines on the DC case.

(c)  The severity category in the federal case is established at category four because it involved Fraud in the Amount of from $40,000 to $200,000.

II.  SFS:

A=0  Subject has 5 or more prior convictions:

     1.  7-19-71 Forgery and Uttering. - Two years suspended and two year
         probation.

JACKSON, Ainsworth Charles   19728-101
PREHEARING ASSESSMENT
Page 3

2. 9-15-72 Unauthorized use of Motor Vehicle - Convicted under YCA.

3. 9-11-73 Possession of Stolen Mail and Forgery and Uttering.
   60 days plus 6 years YCA paroled 11-21-74.

4. 3-22-74 Possession of Stolen Property and Uttering U.S.
   Treasury Check in Superior Court, Washington, DC - 4 to 6 years
   indeterminate YCA sentence paroled 11-21-74 with above.

*(handwritten left margin: these cases are the same)*

5. 7-25-75 Uttering and Forgery, False Pretenses. Consolidated for
   judgments - Sentence total 5-15 years. Parole 3-1-83 with an
   expiration date of 1-3-93. Reportedly subject to parole
   violator warrant executed 6-9-88 with a revocation hearing
   pending. We have no other information on the revocation.

6. 4-20-85 Grand Larceny Bad Checks. 2 years prison released by
   appeal bond 8-16-86. Bond revoked 10-2-86 and bench warrant
   remains outstanding.

7. 7-16-84 Grand Larceny and Petty Larceny in Arlington, Virginia.
   Subject sentenced 4 years each count to run consecutive and 12
   months to run consecutive with count 1. His total sentence
   out of Arlington then was 13 years. Subject released by an
   appeal bond 6-16-86 and absconded. Bond revoked 10-2-86 and
   warrant outstanding.

*(handwritten left margin: Cases overturned on appeal)*

8. 5-26-88 Assault on U. S. Officer. Greenville, South Carolina.
   Sentenced 5 months and 18 days given credit for time served. No
   other information on that offense.

9. Also note there is a date 11-9-88 Forgery and Uttering out of
   Superior Court DC with a sentencing scheduled for 4-14-89.

Also should be pointed out that the Presentence Investigation from the
federal case states that there were several pending cases.

*(handwritten: Shows that Plaintiff does not have 6 prior Commitments)*

B=0  Subject has 3 prior commitments of more than 30 days that were
imposed prior the last  act of the current offense. (It should be noted
that the last sentence which he did not serve from the early 80's was
counted because he had been sentenced, released by appeal bond and had
failed to appear thus he avoided serves of the sentence illegally and the
commitment was counted).

C=2  Subject was 35  years old at the commencement of the current offense,
and does not have 5 or more prior commitments.

D=0  Subject was last released from a countable commitment less than 3
years prior to the current offense.  Date of last release: appears to
have been 6-16-86 based on his having been convicted, sentenced and
released on appeal bond and he failed to appear.

# HEARING SUMMARY

**Name: Jackson, Ainsworth**                                   Reg No:  **19728-101**

## Hearing Parameters

Hearing Type ............................. : **Revocation (Local)**

Hearing Date ............................. : 4/28/05

Examiner ..................................... : Casey Skvorc

Institution ................................... : D.C.-Correctional Treatment Facility

Second Designation .................... : None

## Sentence Parameters

Sentence Type ........................... : **DC Parole Eligible**

MR/Statutory Release Date ........ : 2/21/09

Full Term Date ........................... : 7/26/2010

Months in Custody ..................... : 2 as of 4/24/05

Detainer ...................................... : None known

## Warrant Parameters

Supervision ................................. : **Parole**

Revoking District & Office ......... : USPO – Greenbelt, MD

Warrant Execution Date ............. : 2/24/05

Probable Cause Date .................. : 3/1/05

**Additional text regarding the above parameters:**  None

---

**Prior Action:**  See Prehearing Assessment dated 4/4/05.

**Counsel:**  LaShanta Johnson and Olinda Moyd of the Public Defender Service.

**Witnesses:**  John Albert II, Supervisory USPO, Greenbelt, MD.

**Procedural Considerations:**  The subject claimed that the Parole Commission did not have jurisdiction over him, and this objection was overruled.

**Charges:**

**Charge No. 1 – Violation of Special Condition Prohibition from Opening a Checking Account:**
    **Evidence Presented:**  The subject denied the above charge.

EXHIBIT
25

The subject testified that his prior USPO had given him permission to open a checking account so he could pursue contracting work.

The subject's SUSPO provided documentation from M & T Bank and Chevy Chase Bank that the subject had opened bank accounts, and provided credible testimony that the subject had not obtained prior permission from his USPO to do so. The SUSPO reviewed the file and did not find any notations from the prior USPO that the subject was authorized to violate this condition. The SUSPO reviewed a notation in the file from the previous USPO indicating that it was her opinion that the subject was "evasive" and untrustworthy.

The testimony of SUSPO Albert was more convincing than the testimony of the subject on this matter.

**Findings of Fact:** This examiner finds that the subject violated the conditions of release as indicated in the above charge.

**Basis:** The testimony of SUSPO Albert.

**Charge No. 2 - Failure to Submit Complete and Truthful Supervision Reports:**
**Evidence Presented:** The subject denied the above charge.

The subject claimed his prior USPO had instructed him that he did not need to disclose the bank accounts at M & T Bank and Chevy Chase Bank.

The SUSPO provided credible testimony and documentation from the subject's supervision file indicating that the subject had never disclosed on his monthly reports that he had bank accounts at M & T Bank and Chevy Chase Bank.

The testimony of SUSPO Albert was more convincing than the testimony of the subject on this matter.

**Findings of Fact:** This examiner finds that the subject violated the conditions of release as indicated in the above charge.
**Basis:** The testimony of SUSPO Albert.

**Charge No. 3 – Making a False Statement:**
**Evidence Presented:** The subject denied the above charge. The subject testified that he had held himself out to have another individual's power of attorney, and that he did not specifically state that he was an attorney.

The SUSPO provided documentation that the subject had in fact held himself out to be an attorney in court documents that had been filed.

The testimony of SUSPO Albert was more convincing than the testimony of the subject on this matter.

**Findings of Fact:** This examiner finds that the subject violated the conditions of release as indicated in the above charge.
**Basis:** The testimony of SUSPO Albert.

**Charge No. 4 - Law Violation  - Fraud:**
**Evidence Presented:** The subject denied the above charge. The subject claimed that the bank had given him permission to sign his mother's name on her checks. The subject admitted that he signed his mother's name on the check that was deposited some months after her death.   When asked about his actions of forging his signature on his deceased mother's checks, his response was, "She's dead, isn't she?"

The SUSPO provided documentation from his file regarding the subject's overdraft of the bank account at M & T Bank. *Shows that plaintiff only overdrafted his account not commit Bank Fraud.*
The testimony of SUSPO Albert was more convincing than the testimony of the subject on this matter.

> **Findings of Fact:** This examiner finds that the subject violated the conditions of release as indicated in the above charge.
> **Basis:** The testimony of  SUSPO Albert.

**Charge No. 5 - Failure to Report to Community Supervision Officer as Directed:**
> **Evidence Presented:** The subject denied the above charge.  The subject stated he did not know he was supposed to report to the SUSPO on the dates in question.
>
> The SUSPO testified that the subject was told to report to him and did not on the dates in question and that the subject was not in contact with him after that time.
>
> **Findings of Fact:** This examiner finds that the subject violated the conditions of release as indicated in the above charge.
> **Basis:** The testimony provided by SUSPO Albert was more credible than the subject's testimony on this matter.

**Charge No. 6 - Failure to Report Change in Residence:**
> **Evidence Presented:**  The subject denied the above charge, and testified that he had maintained his residence at the address last listed with the SUSPO.
>
> The SUSPO provided documentation and testimony that the US Marshals had gone to the subject's last known residence, and upon entering the residence it was largely empty, other than a few boxes.
> **Findings of Fact:** This examiner finds that the subject violated the conditions of release as indicated in the above charge.
> **Basis:** The testimony SUSPO Albert was more convincing than the subject's testimony on this matter.

**Discipline:**  None.

**Release Plans:**  The subject hopes to resume his role in the community as a contractor.

**Guideline Parameters**    *Shows U.S. Parole Commission has given plaintiff new charge of Bank Fraud & theft.*

**Severity Justification:**  Category Three because it involved Bank Fraud and Theft between $2000 and $40,000.
**Salient Factor Score:**    2.

Re-parole Guideline Range: ............... 24-32
Disciplinary Guideline Range: ................. 0
Total Guideline Range: ...................... 24-32

**Evaluation:** This subject was evasive in his responses to questions and gave the appearance during the hearing that he was attempting to avoid any responsibility for his behavior. The subject has an extensive history of bank fraud as noted in the PHA: he now has 12 convictions for crimes that began in 1972. His 1996 violation behavior and new offense involved in a check typed scheme put at rest the $750,000 of bank money. ← *Shows according to these records that plaintiff has been convicted of a new offense. Contradicts*

**Recommendation:** Revoke parole.  Continue to Expiration. *statement made by def. on pg 11 of Motion to Dismiss.*

**Conditions:** None.

**Statutory Interim Hearing:** October 28, 2006.

**Guideline Use:** A decision above the guidelines is warranted because you are a poorer risk than indicated by the guidelines in that you have 12 prior convictions for forgery, fraud or larceny type crimes with 6 prior commitments. You admitted at the hearing that you wrote your mother's name on a check months after her death. You also admitted to extensive overdrafts of bank accounts, which you were not authorized by your supervision officer to open, based on your prior fraudulent behavior with banks.  Your claim that you were authorized by his prior USPO to evade the conditions of his parole demonstrates a disregard and disrespect for complying with your conditions of parole.

**Additional Text:** None.

**Executive Reviewer's Comments:**

CXS/PAH
April 30, 2005

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | |
|---|---|
| Name: JACKSON, Ainsworth | Institution: D.C.- C.T.F. |
| Register Number: 19728-101 | |
| DCDC No: 172-691 | Date:    May 19, 2005 |

As a result of the hearing conducted on April 28, 2005, the following action was ordered:

### D.C. Local Revocation

Revoke parole. None of the time spent on parole shall be credited. Continue to expiration.

### FINDINGS OF FACT:

The Commission finds as a fact that you violated conditions of release as charged as indicated below:

Charge No. 1- Violation of Special Condition (Prohibition From Opening a Checking Account).

Basis: The testimony provided by Supervisory USPO Albert.

Charge No. 2 - Failure to Submit Complete and Truthful Supervision Reports.

Basis: The testimony provided by Supervisory USPO Albert.

Charge No. 3 - Making a False Statement.

Basis: The testimony provided by Supervisory USPO Albert.

Charge No. 4 - Law Violation: Fraud.

Basis: The testimony provided by Supervisory USPO Albert.

Charge No. 5 - Failure to Report to Supervising Officer as Directed.

Basis: The testimony provided by Supervisory USPO Albert.

Charge No. 6 - Failure to Report Change in Residence.

Basis: The testimony provided by Supervisory USPO Albert.

---

JACKSON 19728-101                                           -1-                            Clerk:   MDD

Queued: 05-19-2005 10:23:01 BOP-D.C.-Correctional Treatment Facility | USPO-District of Maryland, Greenbelt | USM-
District of Columbia - District Court, D.C. District Court | FPD-District of Columbia, District of Columbia - DC |

EXHIBIT
26

REASONS:

Your parole violation behavior has been rated as criminal conduct of Category Three severity because it involved Bank Fraud at Least $2,000 but less than $40,000 and administrative violations. Your salient factor score is 2. See the attached sheet for an explanation of your individual Salient Factor Score items. The table at the bottom presents the points for Salient Factor Score Item C. As of 04-24-2005, you have been in confinement as a result of your violation behavior for a total of 2 month(s). Guidelines established by the Commission indicate a customary range of 24-32 months to be served before release. After review of all relevant factors and information, a decision above the guidelines is warranted because you are a poorer parole risk than indicated by your Salient Factor Score in that you have 12 prior convictions for forgery, fraud or larceny type crimes with 6 prior commitments. You admitted at the hearing that you wrote your Mother's name on a check months after her death. You also admitted to extensive overdrafts of bank accounts, which you were not authorized by your Supervision Officer to open, based on your prior fraudulent behavior with banks. Your claim that you were authorized by your prior Supervision Officer to evade the conditions of your parole demonstrates a disregard and disrespect for complying with your conditions of parole.

THE ABOVE DECISION IS APPEALABLE

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    U.S. Marshals Service
       District of Columbia - District Court
       333 Constitution Ave, N.W., Room 1400
       Washington, D.C. 20001
       Warrants - Attn: Sean McLeod

       U.S. Probation Office
       District of Maryland
       9200 Edmonston Road, Suite 200
       Greenbelt, MD 20770

       Olinda Moyd
       Public Defender Service
       District of Columbia
       Special Proceedings Division
       633 Indiana Avenue, N.W.
       Washington, D.C. 20004

### SALIENT FACTOR SCORE (SFS-98)

**Your Pts**    **Salient Factor Score (SFS-98) Item Explanations**

0           A - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

0           B - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

1           C - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation)

0           D - Recent commitment free period (three years)
            No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

0           E - Probation/parole/confinement/escape status violator this time
            Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

1           F - Older offenders
            If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0

2           Salient Factor Score (SFS-98) (sum of points for A-F above)



| Points For SFS Item C | | | |
|---|---|---|---|
| Age | Prior Commitments | | |
| | 0-3 | 4 | 5+ |
| 26 & Up | 3 | 2 | 1 |
| 22-25 | 2 | 1 | 0 |
| 20-21 | 1 | 0 | 0 |
| 0-19 | 0 | 0 | 0 |

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**Notice of Action on Appeal**

| | | | |
|---|---|---|---|
| Name: Jackson, Ainsworth Institution | Institution: | Rivers | Correctional |
| Register Number: 19728-101 | Date: | August 29, 2005 | |

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirm the previous decision.

**REASONS**:

Your first claim is that your sentence has expired. You have raised this claim in several habeas corpus petitions and this claim has been denied. See <u>Ainsworth Jackson</u> v. <u>Mendez</u>, Civ. No. 3: CV-98-1279 (M.D. Pa. order dated Mar. 26, 1999) and <u>Ainsworth Jackson</u> v. <u>U.S. Parole Commission</u>, Civ. Action No. AW-04-3081 (D.Md. order dated Mar. 29, 2005). The Commission sees no reason to grant you relief by administrative action on the same claim.

Your second claim is that the Commission erred in finding that you violated the law and thereby violated the conditions of your release. You assert that the Commission could only find that you committed law violations if you were "arrested, charged, indicted, or convicted" of the offenses listed in charges 3 and 4 of the warrant application. The Commission denies your second claim because the Commission has the discretionary authority to revoke parole based on a finding of new criminal conduct, even though the conduct was not the subject of an arrest, charge, indictment or conviction.

In response to your claim that the Commission had insufficient evidence to support the findings on charges 5 and 6 (failure to report to your probation officer as directed and failure to report a change in residence), the findings are supported by the testimony of the probation officer at the hearing and a violation report dated March 1, 2005.

The Commission does not agree with your claim that the use of the reparole guidelines violates the constitutional ban against ex post facto laws. Parole guidelines are not the type of laws covered by the Ex Post Facto Clause and their use does not increase the punishment that was in effect at the time of your crime.

The Commission properly denied you credit for all time spent on parole because D.C. law requires this sanction. This issue was resolved against you in the case you brought in the District of Maryland.

Finally, a review of your criminal record as outlined in your 1996 presentence report shows that there is some evidence in the report supporting the Commission's findings that you have 12 convictions for fraud/forgery/larceny offenses and 6 prior commitments.

All decisions by the National Appeals Board on appeal are final.

**EXHIBIT**
28

Cc:

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

APR 2 3 2007

Chambers of Judge Roberts

AINSWORTH C. JACKSON,          :
                               :
          Plaintiff            :
                               :
                               :
     v.                        :
                               :
                               :  C.A. No. 07-203 (RWR)
BUREAU OF PRISONS, et al.,     :
                               :
     Defendants.               :
...........................:

A F F I D A V I T

I, Ainsworth C. Jackson, affiant, deposes and say that the
statements made herein are true and correct and made under the
penalty of perjury.

1. Affiant avers that he is not challenging the "Revocation of
his parole," but is challenging the U.S. Parole Commission's
failure to maintain accurate records on affiant and the Commission's
non-compliance with accurate recordkeeping requirements pursuant
to section (e)(5) of the Privacy Act.

2. Affiant avers that he has not been arrested, charged, indicted
or convicted for any new charges since August 16, 1995.

3. Affiant avers that he has not been arrested, charged, indicted
nor convicted for any new criminal charges such as "Fraud & Making
A False Statement as alleged by the U.S. Parole Commission stated
in affiant's "Notice of Action" dated May 19, 2005, and in the

Parole Revocation Summary dated April 30, 2005, (Defendants Exhibit #25).

4.  Affiant avers that he does not have twelve (12) prior convictions for forgery, fraud and larceny type crimes nor does affiant have six (6) prior commitments of thirty (30) days or more (See Defendants Exhibit #2, pages 2 & 3).

5.  Affiant avers that he does not even have twelve (12) convictions, let alone twelve (12) prior convictions for forgery, fraud and larceny type crimes (See Defendants Exhibit #2, pages 2 & 3).

6.  Affiant avers that he was never given a copy of the "Preliminary Guideline Assessment" by the U.S. Parole Commission before his in-person parole revocation hearing on December 1, 1999.

7.  Affiant avers that he never saw any information contained in his PSI or his parole file that stated affiant had twelve (12) prior convictions for forgery, fraud and larceny type crimes or that affiant had six (6) prior commitments of thirty (30) days or more.

8.  Affiant avers that he had never discussed at his "Parole Revocation Hearing" held on December 1, 1999 with "Parole Examiner, Patricia L. Denton, the subject about affiant having twelve (12) prior convictions for forgery, fraud and larceny type crimes, or having six (6) prior commitments of thirty (30) days or more.

9.  Affiant avers that he never received a copy of his "Revocation Hearing Summary" for the "Revocation Hearing" held on December 1, 1999.

-2-

9.  Affiant avers that the U.S. Parole Commission violated Regula-
tion § 2.55 of their rules by failing to allow plaintiff to review
his parole file prior to affiant's April 28, 2005 "Parole Revocation
Hearing; and (2) failed to give or allow affiant to review his
"Preliminary Guideline Assessment" and therefore, because of these
denials, affiant had no idea what evidence was being used against
him at his April 28, 2005 "Parole Revocation Hearing."

10. Affiant avers that the topic of affiant having twelve (12) prior
convictions for forgery, fraud and larceny type crimes or six (6)
prior commitments of thirty (30) days or more were never discussed
with affiant at the April 28, 2005 "Parole Revocation Hearing."

11. Affiant avers that the statement **"she's dead isn't she,"** which
defendant U.S. Parole Commission alleged affiant made, is a **"False,
and is Fabricated,"** because affiant made no such statement.

12.  Affiant avers that defendant U.S. Parole Commission has **"falsely"**
stated in the "Parole Revocation Hearing Summary, defendants Exhibit
#25, page 4 that affiant had been convicted of a **"new offense" which
had placed the bank at risk of $750,000.**

13.  Affiant avers that he never received a copy of his "Parole
Revocation Hearing Summary" for the "Revocation Hearing" held on
April 28, 2005.

14.  Affiant avers that he has never been afforded a fair opport-
unity at either of his "Parole Revocation Hearings" to present
contentions abut the challenged **"false documents"** in his parole
file.

-3-

15. Affiant avers that all the information which the U.S. Parole Commission alleges about affiant being convicted of "Fraud, Making A False Statement, twelve (12) prior convictions for forgery, fraud and larceny type crimes, and six (6) prior commitments of thirty (30) days or more is "False."

16. Affiant avers that because defendant U.S. Parole Commission failed to maintain accurate records pursuant to the Privacy Act, 5 U.S.C. § 552a(e)(5), an **adverse determination"** was "rendered" against affiant at the April 28, 2005 "Parole Revocation Hearing.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this ___17+14___ day of ___April___ 2007.

_____
Ainsworth C. Jackson

Subscribed to and Sworn Before Me on this ___17th___ day of ___April___ 2007.

_____
Notary

-4-