# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AINSWORTH JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **C.A. No. 07-203 (RWR)** |
| | ) | |
| **BUREAU OF PRISONS, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants, by counsel, hereby reply to plaintiff's opposition to defendants' motion to dismiss or, in the alternative, motion for summary judgment. In his "Motion In Opposition," plaintiff alleges that he has never been afforded an opportunity to contest the Parole Commission's finding that he has a criminal record consisting of 12 prior convictions for forgery, fraud, or larceny-type offenses.[1] See Plaintiff's Motion In Opposition at 13, 16-17. Because he asserts that he was not given a fair opportunity to contest the accuracy of this finding, plaintiff contends that the Commission has not complied with the "fairness" requirement set by 5 U.S.C.

---

[1] Plaintiff raises other issues in his recent motion, such as the alleged inaccuracy of information that he committed fraud or made a false statement (parole violation charges reviewed with plaintiff at his 2005 revocation hearing), as well as the the hearing examiner's written report of the revocation hearing in which plaintiff stated "She's dead, isn't she?" in the discussion of his alleged fraud in the use of his deceased mother's bank account. (See Defendants' Exhibit 25). The first issue is addressed in the Defendants' Motion to Dismiss Or, In The Alternative, For Summary Judgment, while the second issue does not involve information that caused or resulted in an adverse parole determination and therefore is not actionable under 5 U.S.C. §552a(e)(5). The factors and information that led to the adverse parole determination are contained in the notices of action issued after the 2005 revocation hearing and the administrative appeal submitted by the plaintiff. (See Defendants' Exhibits 26 and 28). The reasons for the Commission's action outlined in both notices contain no reference to plaintiff's reported statement on his mother's death.

§552a(e)(5).

Plaintiff's claim that he has been denied the opportunity to contest the Commission's finding as to the nature and extent of his criminal history is simply not true.  As early as the notice of action on appeal issued on June 8, 2000 (see Defendants' Exhibit 19), the Commission informed plaintiff in its reasons for the denial of his administrative appeal that a decision above his guideline range was warranted because:

> [Y]ou are a poorer parole risk than shown by your salient factor score.  Your lengthy criminal record of repeated forgery/fraud/theft offenses, with 12 convictions for such crimes commencing in 1972, clearly evidences that your chosen career is to obtain money through theft and fraudulent practices.

Only a week later, plaintiff prepared and sent to the Commission a request to reopen his case, based, in part, on his challenge to the Commission's finding as to the nature and extent of his criminal record.  (See Defendants' Exhibit 29, attached to this reply).  With this June 15, 2000 letter, plaintiff attached as an exhibit a listing of his criminal convictions by a Commission hearing examiner[2], and in the letter outlined his contentions as to mistakes in the description of his criminal history.  With his letter plaintiff provided no documentation from court sources that supported his claims about the accuracy of the criminal record entries.

Five years later, after he was charged by the Commission with more fraud-related criminal conduct and administrative violations, plaintiff was given another revocation hearing. (See Defendants' Exhibit 25).  At this hearing, plaintiff had the opportunity to discuss with the hearing examiner not only his version of the events that led to the charges of parole violation

---

[2]This listing was apparently taken from a prehearing assessment done by former Commission Hearing Examiner Kenneth Walker on November 5, 1999, before plaintiff's December 1, 1999 revocation hearing.  (See Defendants' Exhibit 30, attached).

(including the alleged fraud and offense of making a false statement), but also factors such as his criminal history.   As indicated in the attached declaration of Bureau of Prisons General Counsel Rockne Chickinell, a review of the tape recording of the hearing shows that the hearing examiner summarized plaintiff's criminal history for plaintiff and his counsel, itemizing his record of convictions, and received no complaint that the oral summary was inaccurate.  (Exhibit 31, Declaration of Rockne Chickinell). As a result of this hearing, the Commission issued a decision revoking plaintiff's parole, and again exceeded his reparole guidelines, in part because of the finding concerning the nature and extent of his criminal record.  (See Defendants' Exhibit 26). Plaintiff challenged the accuracy of this finding in his administrative appeal to the Commission's National Appeals Board.  (See Defendants' Exhibit 27).  Plaintiff provided no supporting evidence for his claim on the alleged inaccuracy of the Commission's finding.  The Commission denied the administrative appeal, noting that plaintiff's 1996 presentence report provided some evidence supporting the Commission's finding.  (See Defendants' Exhibit 28).

Plaintiff has had ample opportunity, through both the Commission's hearing process and administrative appeal process, to challenge the accuracy of the finding on the nature and extent of his criminal history. Defendants, therefore, for the reasons stated in their motion to dismiss or, in the alternative, motion for summary judgment and in this reply, request that this Court dismiss

plaintiff's Complaint with prejudice.

Respectfully submitted,


_____//_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_____//_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____//_____
ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
501 Third Street, N.W., Rm E-4218
Washington, D.C.  20530
(202) 514-7236

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Defendants' Reply to Plaintiff's Opposition to Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment has been made by mailing copies thereof to:

Ainsworth C. Jackson, #19728-101
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

on this 24th day of May, 2007.

_____//_____
Alexander D. Shoaibi
Assistant United States Attorney

**UNITED STATES DEPARTMENT OF JUSTICE**

**UNITED STATES PAROLE COMMISSION**

I certify that I am a custodian of records of the United States Parole Commission, which is a repository of records concerning parole release and supervision for federal and District of Columbia offenders. The Parole Commission's address is 5550 Friendship Boulevard, Chevy Chase, Maryland 20815.

I further certify that, on the date noted below, I had custody of the Parole Commission's file for Ainsworth Jackson, Register Number 19728-101, as part of my official duties with the Commission.

The documents included with this certificate are true copies of documents found in that file.



*In witness whereof, I have signed, and caused the seal of the United States Parole Commission to be affixed on the date noted below.*

Rockne Chickinell
General Counsel
U.S. Parole Commission

Dated:  5-16-07



June 15, 2000

RECEIVED
JUN 20 200...
LEGAL
U.S. PAROLE COMMISSION

Ainsworth C. Jackson
Reg. No. 19728-101
FCI Allenwood/Medium
P.O. Box 2000/Unit 1B
White Deer, Pa. 17887

Mr. Michael A. Stover, Esq.
General Counsel for the
U.S. Parole Commission
5550 Friendship Blvd., Suite 420
Chevy Chase, Maryland 20815

<u>MOTION TO REOPEN REVOCATION PROCEEDINGS BASED
UPON ERRONEOUS INFORMATION CONTAINED PAROLEE'S
PSI AS WELL AS IMPROPER USE OF FEDERAL GUIDE-
LINES ON A D.C. CODE SENTENCE</u>

Parolee moves this Commission pursuant to 28 C.F.R.
§ 2.28 to "Reopen His Case" which was decided on June 8, 2000,
for the following reasons: (1) the U.S. Parole Commission used
erroneous information that was contained in parolee's PSI con-
cerning the amount of prior convictions, and how many times
parolee had been incarcerated for thirty (30) days or more,
among other things contained in the PSI, used by Examiner Patricia
L. Denton; (2) the Commission did not use the proper D.C. Guide-
lines (See Exhibit A) or follow the proper procedures contained
in 28 C.F.R. § 2.65, when it made it decision; and (3) the
Commission made an incorrect ruling when it stated that it had
not "De-Aggregated" parolee's "Mixed D.C. & Federal sentences.

Parolee submits that Exhibit B, which is a copy of page 3
of U.S. Parole Examiner, Kenneth Walker, which allegedly depicts

EXHIBIT
29

all of parolee's criminal conviction.   Parolee states that this information is totally inaccurate and incorrect and parolee will state in chronological order the mistakes to this report:

1.   7-19-71: parolee was arrested and was released on bond on this charge, and therefore, parolee did not spend thirty days or more in jail.

2.   9-15-72: parolee was given a 5010(b) Youth Corrections Act, which was run concurrent with items 3 & 4.

3.   9-11-73: Parolee was sentenced in the U.S. District Court for the Eastern District of Pennsylvania to a 60 day study pursuant to 5010(b) to determine whether parolee was qualified to receive a 5010(b) Youth Corrections sentence, or probation.

4.   3-22-74: Possession of Stolen Mail, Forgery and Uttering, and Possession of Stolen Property and Uttering US Treasury Check are the same charge, which is item 3; parolee was sentenced on this date to a 4-6 year 5010(b) Youth Corrections sentence, these charges are not different, but the same, so this is only one conviction, not two as listed by the hearing examiner.

5.   Item 5 is correct.

6.   Items 6 & 7 convictions were overturned by the Virginia Court of Appeals, and the charge of absconding while on bond was dismissed.

7.   Items 8, 9, 10, & 11 all stem from one arrest which was on December 7, 1987, when parolee was arrested by the FBI in Greenville, South Carolina.   Item 8, Assault on a US Officer, was changed to resisting arrest, from the December 7, 1987

-2-

arrest by the FBI.  Item 9 is the same charge that parolee was convicted of in the U.S. District Court for the Western District of North Carolina in February of 1989.  Items 10 & 11 are for the present D.C. sentence that is being served for parole violation. All of thess charges are from one central arrest which was on December 7, 1987, not on different dates as has been listed.

8.  In item 2, parolee was arrested for UUV, and was released on his personal recognizance.  While parolee was serving his YCA sentence at J.F.K. Youth Correction Facility in Morgantown, West Virginia, the U.S. Marshal's from the District of Columbia transported parolee back to the District of Columbia and parolee was sentenced to a YCA for UUV in the Superior Court of D.C., and therefore, all of these charges are counted as only one prior commitment for more than thirty day, not three, as the hearing examiner has counted.  Adding up the prior commitments in this regards, it gives parolee only three prior commitments of more than thirty days, minus the over-turned convictions, and counting these convictions, it gives parolee only four prior commitments of more than thirty days, but most important, it establishes that parolee is entitled to two (2) additional points to his salient factor score which would give him a total of four (4) points, and therefore instead of parolee's guideline range being 60-72 months, parolee's guideline range calls for 48-60 months.  It further establishes that parolee does not have 12 convictions for such crimes as fraud, etc., as stated in the "Notice of Action" dated June 8, 2000 (See Exhibit C), nor does parolee have 12 convictions for any crimes, and because of this erroneous in-

-3-

formation, the Commission has stated that my lengthy record of repeated forgery/fraud/theft warranted a continuance above the guidelines. In the previous decision of January 21, 2000, the Commission did not feel that a decision outside the guidelines was warranted, even after it had taken into account my criminal record, so parolee would like to know what prompted the Commission to now make such a decision to go outside the guidelines.

Parolee submits that the Commission erred when it stated that parolee's sentences had not been "De-Aggregated," because according to 28 C.F.R. § 2.5 it clearly states the following:

> "When multiple sentences are aggregated by the Bureau of Prisons pursuant to 18 U.S.C. § 4161 and § 4205, such sentences are treated as a single aggregate sentence for the purpose of every action taken by the Commission pursuant to these rules, and the prisoner has a single parole eligibility date as determined by the Bureau of Prisons."

Looking at Exhibit D, "Notice of Action" dated August 30, 1991, it clearly shows that parolee's sentence was "De-Aggregated" pursuant to Bureau of Prisons Policy Statement #5880.30(9)(e), by the following language contained in the "Notice of Action:"

> **"The above parole decision was made <u>strictly</u> <u>on</u> <u>the</u> <u>basis</u> <u>of</u> <u>your</u> <u>Federal</u> <u>crimes</u> <u>and</u> <u>sentences</u>."**

28 C.F.R. § 2.5 clearly mandates that only one parole eligibility and mandatory release date on a aggregate sentence be used, not two parole release dates, one for expiration of the federal sentence on 11-1-93, and a parole release date for the D.C. Code sentence on 8-26-94. The decision in this case was not made for release on a single, aggregate prison term, but for two separate

-4-

and distinct sentences, one federal and the other a D.C. Code
violation.   Support is found from page 1 of U.S. Parole Examiner,
Kenneth Walker; page 1 of his report (See Exhibit D-1) states the
following:

> **"It appears that the federal portion of the subject's sentence
> may have expired in August of 1994."**

For examiner Walker to make such a statement as this, he
obviously was expressing the fact that he knew that parolee's
sentences had been "De-Aggregated" pursuant to BOP PS# 5880.30
(9)(e), and that parolee had satisfied the federal portion of
these sentences.   If in fact parolee's sentences had not been
"De-Aggregated" as the Commission states, then examiner Walker
would not have made reference to the fact that parolee's federal one
had expired in August of 1994.

The Commission makes reference to § 2.66, and states that
parolee's sentences were not "de-aggregated" in 1991 when the
Commission made a parole determination using a former version of
its policy for deciding mixed U.S. Code and D.C. Code cases.   To
the contrary, § 2.66 shows that the Commission did "De-Aggregate"
parolee's sentence (See Exhibit A, page 12) where the Commission
admits that it has to "De-Aggregate" these sentences and arrange
them into two separate blocks of sentences--federal and D.C.--with
the federal block of sentences being the first in order, disregard-
ing which sentence was imposed first, something that the Parole
Commission is not authorized to do unless it is running the federal
sentence concurrent with the D.C. sentence, which the Commission
states in a later version of § 2.66 (See Exhibit D-2, § 2.66,

-5-

page 186, dated 1/01/95) that:

> "f(3)  If the resulting aggregate guideline range is the
> same as the basic federal guideline (excluding escape,
> failure to appear, and prison misconduct), the Commission
> shall permit the federal time to be CONCURRENT with the
> D.C. minimum time."

Also find in § 2.66(c) is the following:

> (c)  Determining the Federal Guideline Range.  The Commission
> shall first consider the U.S. Code offenses pursuant to the
> guidelines at § 2.20 and shall determine the appropriate number
> of months to be served (the prisoner's federal time).  The
> Commission shall deem the "federal time" to have commenced
> with the prisoner's initial commitment on the current aggregate
> sentence, including jail time.

Parolee states that in order for the Commission to accomplish

these acts described in § 2.66, they would have to "De-Aggregate"

the D.C. & Federal Sentence, otherwise, the Commission would be

**"Redrafting the D.C. & Federal Criminal Codes**," something the

Commission has not been delegated the authority to do by Congress.

According to Exhibit A, Cosgrove v. Thornburgh, 703 F. Supp.

995 (D.D.C. 1988) and Franklin v. Ridley, App. D.C., 635 A.2d

356 (1993) required the U.S. Parole Commission to apply strictly

D.C. Parole Laws in making a determination for a D.C. Code violator

who is confined in a federal institution.  Section 2.66 requires

the U.S. Parole Commission to use federal guidelines when deciding

parole release for D.C. prisoners.  There is no way you can use

§ 2.20 and § 2.21 and convert the D.C. minimum time into an

equivalent offense severity rating when conducting a D.C. parole

hearing; this was prohibited by Cosgrove v. Thornburgh, supra.

The only possible way for parolee or any D.C. Code prisoner to

have strictly D.C. parole laws applied to a mixed U.S.  & D.C.

-6-

sentences was for these sentences to be "De-Aggregated," and
§ 2.66 accomplished this act.  In 1991, when parolee saw the
U.S. Parole commission on these "Mixed Sentences," parolee's
D.C. sentence had been the primary sentence and jurisdiction.
For the U.S. Parole Commission to commence parolee's federal
sentence at the commencement of parolee's initial commitment on
the current aggregate sentence, including jail-time, was in
effect, the running of these "Mixed Sentences" concurrent with
each other (See § 2.66(f)(3)).  Section 2.66 was used in order
to effectuate the "De-Aggregation" and the running concurrent
of these "Mixed Sentences" of parolee's in 1991.

Finally, parolee states that when examining Exhibit A,
the "Memorandum from Michael A. Stover, General Counsel of the
U.S. Parole Commission, § 2.66 does not make any mention that
a federal sentence should be continued to expiration and that
two distinct parole dates should be given for the D.C. & federal
sentences.  Section 2.66 has effectively "De-Aggregated" all
"Mixed D.C. & Federal sentences, because you cannot apply federal
guidelines to a D.C. Code sentence, nor could you apply D.C.
Parole guidelines to a federal sentence in 1991, and therefore,
parolee states that the Commission is totally in error when it
states that the herein sentences were not "De-Aggregated," and
that parolee's "Full Term Date" is 2008.  In Chambers v. Holland,
920 F. Supp. 622 (M.D. Pa. 1996) the district court stated the
following:

> "The sovereign which first sentences a defendant has primary
> jurisdiction over him.  Shumate v. United States, 893 F. Supp.

-7-

When a federal court sentences a defendant in state custody at the time of sentencing, the federal sentence may commence if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence." United States v. Smith, 812 F. Supp. 368, 370 (E.D.N.Y. 1993), citing Barden v. Keohane, 921 F.2d 476, 481-82 (3rd Cir. 1990); 18 U.S.C. § 3621 (vesting designation authority in Bureau of Prisons); and 28 C.F.R. § 0.96 (delegating authority of Attorney General under repealed 18 U.S.C. § 4082).

Section 3621(b) places on the BOP the responsibility of designating the place of the prisoner's iimprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habit-ability established by the Federal Government or otherwise which the person was convicted, that the Bureau determines to be appropriate and suitable, considering . . . ." 18 U.S.C. § 3621(b)."

Parolee submits that on December 19, 1989, he was paroled (See Exhibit E,  D.C. Parole Certificate) by the D.C. Board of Parole to his consecutive D.C. & federal sentences.  Parolee could not begin his federal sentence because it was consecutive to his D.C. sentence, and parolee had not been yet designated by the Bureau of Prisons to serve his federal sentence at the Central Facility in Lorton, Virgina.  On November 15, 1990, parolee was designated (See Exhibit E-1) by the Bureau of Prisons to serve his federal sentence at the Central Facility in Lorton, Virginia. Since parolee's federal sentence had not yet commenced on 12-19-89, the only way for his federal sentence to commence on 12-19-89, and parolee be given jail-time credit towards this federal sentence, the Federal Bureau of Prisons had to make a **"Nunc Pro Tunc"** designation pursuant to Bureau of Prisons Policy Statement #5160. 03, otherwise, parolee's federal sentence could not have commenced on 12-19-89 because of the detainer filed by the U.S. Marshal's

-8-

for the six year federal sentence that parolee had received in the U.S. District Court (See Exhibit E-2) for the Western District of North Carolina.

A final point remains. The Commission has stated that it used the proper guidelines (federal) pursuant to 28 .C.F.R. § 2.87 when it gave parolee his parole revocation hearing. Parolee disagrees with this assessment because contained in 28 C.F.R § 2.65, it clearly states (See Exhibit F) that the Commission shall follow the guidelines at § 2.21 of these rules, but re-hearings shall be scheduled according to the guidelines of the D.C. Board of Parole. According to the rehearing guidelines of the D.C. Board of Parole, parolee was entitled to be reheard within one (1) year, or using Exhibit A, page 9, parolee should have been reheard within 15-24 months. Finally, parolee states that contrary to D.C. law, the U.S. Parole Commission used federal guidelines when they made this decision, because the D.C. Board of Parole guidelines do not employ the use of a offense severity category, nor guidelines contained in § 2.20, and § 2.21. Even then, the Commission still did not follow the procedures outlined in 28 C.F.R. § 2.65, by using the rehearing guidelines to determine parolee's parole release.

In sum, parolee states that in light of the aforementioned, a "New Parole Release Date" should be given to parolee, discharging him immediately on parole and terminating his parole.

-9-

Respectfully Submitted,

*Ainsworth C. Jackson*

Ainsworth C. Jackson
Reg. No. 19728-101
FCI Allenwood/Medium
P.O. Box 2000/Unit 1B
White Deer, Pa. 17887

**Executed on this <u>15th</u> day of <u>June</u>, 2000.**

*Ainsworth C. Jackson*

Ainsworth C. Jackson

**-10-**

EXHIBIT B

IV.   **SALIENT FACTOR SCORE:**

A =   0       Subject has five or more prior conviction(s).

1.    7/19/71:  Forgery and Uttering - 2 years suspended and placed on 2 years probation.

2.    9/15/72:  Unauthorized Use of a Motor Vehicle - convicted under YCA.

3.    9/11/73:  Possession of Stolen Mail, Forgery and Uttering - 60 days plus 6 years YCA; paroled 11/21/74.

4.    3/22/74:  Possession of Stolen Property and Uttering US Treasury Check - 4-6 years undetermined YCA; paroled 11/21/74.

5.    7/25/75:  Uttering, Forgery, False Pretenses - 5-15 years; paroled 3/1/83.

6.    4/20/85:  Grand Larceny and Bad Checks - 2 years custody; released on appeal bond 8/16/86, bond revoked on 10/2/86 and Bench Warrant remained outstanding.

7.    7/16/84:  Grand Larceny and Petty Larceny - total sentence 13 years; released on appeal bond on 6/16/86 and absconded; bond revoked 10/2/86.

8.    5/26/88:  Assault on a US Officer - 5 months custody.

9.    7/21/87:  Bank Fraud (two counts) - 6 years custody.

10.   1983:  Uttering and Forgery - 2-6 years.

11.   Bail Reform Act - 4 months to 1 year consecutive; 8/26/94 paroled.

B =   0       Subject has five prior commitments of more than 30 days that were imposed prior to the last overt act of the current offense (see dispositions listed above).

C =   1       Subject was 43 years old at the commencement of the parole violation behavior.  Subject has five prior commitments.

D =   0       Subject was last released from a countable commitment less than 3 years prior to the current offense.  Date of last release: (8/26/94).

E =   0       Subject is a parole status violator.

F =   1       Subject was over 41 years of age or more at the commencement of the current offense.

2.    **TOTAL SCORE**

&lt;SUMCODE-REVO_PRE&gt;

## REVOCATION PREHEARING ASSESSMENT

**Original Offense of Conviction - Bank Fraud (Two Counts)**

**Violation Offense Behavior -  Interstate Transportation of Securities taken by Fraud and Assault on a Police Officer**

**HEARING TYPE:  INSTITUTIONAL**

| | | | |
|---|---|---|---|
| **Name** | :JACKSON, Ainsworth | **Institution** | :Oklahoma FTC |
| **Reg No** | :19728-101 | **Projected MR Date:** 4/17/2005 | |
| **Date of Birth:** 5/13/52 | | **Full Term Date:** 1/17/2008 | |
| **Date Dictated:** 11/5/99 | | **Fines/Restitution/Court Assessment:** Yes | |
| | | **Reviewer** | :Kenneth Walker |

---

### I.    PREVIOUS COMMISSION ACTION:

On 4/11/89, the subject was sentenced in the W/NC to a 6 year RA term for bank fraud (two counts).  In addition on 4/14/89, the inmate was sentenced in the DC Superior Court, Washington, DC to a 2-6 year sentence for uttering and forgery and received a 4 month to-1 year consecutive sentence for Bail Reform Act.

On 7/15/91, the subject had his Initial Hearing and was continued to expiration on the federal sentence and was continued to an Initial Parole Hearing on the DC sentence in July of 1993.  The initial behavior was rated as Category Four severity because it involved fraud between $40,000 and $200,000, subject had a SFS of a 3 giving him guidelines of 34-44 months.  A decision above the guidelines was warranted because the subject was considered a poorer risk than indicated in that he had four prior convictions for forgery, bad checks, uttering and larceny.  In addition the subject was on bond from a fraud type offense at the time of the federal offense which was also a fraud type conduct.

By NOA dated 9/2/93 the subject was denied parole on the DC sentence and he was scheduled for a rehearing in July of 1994.  By NOA dated 8/3/94 the subject was given a parole effective date on 8/27/94 (on the DC sentence) with a special condition that he reside in a CTC for up to 120 days.

On 8/26/94 the subject was paroled with 8 years, 3 months and 11 days remaining (FTD:7/12/2002).  It appears that the federal portion of the subject's sentence may have expired in August of 1994.

On 9/8/95, a parole violator warrant was issued in the District of Columbia and executed on 10/6/99.  No PI was conducted since the subject incurred a new conviction.

JACKSON.197                                      Page 1 of

EXHIBIT
30

On 10/13/99, Probable Cause was found for charges 1 (B) and 2 as reflected on the warrant application and supplement.

## II.    REVIEW OF CHARGES:

Charge No. 1 (B) - (Not given)

On or about 8/16/95, the subject was arrested by the Federal Bureau of Investigations for the above cited offense which occurred on or about 8/15/95 and 8/16/95. On 8/1/95, the subject opened an account in the name of Columbia First Mortgage Association at Signet Bank in Bethesda, MD. On 8/15/95, the subject deposited a worthless check in the amount of $300,000 into the account. On 8/16/95, the subject withdrew $188,000 against the worthless account. The subject resisted arrest by fighting the arresting officers. Information contained in letter dated 8/28/95 from USPO Corbett, Washington, DC Metropolitan Police Department Arrest and Prosecution Report and Affidavit by Special Agent Christopher Kirwan.

Details of the assault reveal that the subject was arrested at the bank as he was attempting to withdraw the money and began violently struggling with the officers. The pre-assessor did not see any specific details as to whether the officers received any injuries as a result of this struggle.

Charge No. 2 - Interstate Transportation of Securities Taken by Fraud (referenced to charge 1- A) Bank Fraud, on Warrant issued 9/8/95.

On or about 5/1/96, the subject was convicted by guilty plea for the above cited offense in the US District Court, District of Columbia and was sentenced to 57 months custody with 3 years supervised release. Information contained in letter dated 7/8/96 from USPO Corbett and Judgement Order No. CR95-256, dated 5/1/96.

Details of the charge reflects that the conduct initiated on 12/7/94 when the subject rented a mailbox with a mailing address at 43 Randolph Road, Suite 123, Silver Spring, MD for the purpose of receiving mail addressed to American Computer Investigations and American Computers Import/Export. From 7/5/95 through 8/7/95 the subject used a total of five alias and on another occasion his own name which he opened up various checking accounts at various banks. The subject deposited fraudulent checks in the amount of $1,900,000 and attempted to make withdrawals from these various accounts. On 8/16/95 he withdrew $188,000 from the Signet Bank and on the same day he attempted to withdraw $80,000 from a Financial Institution titled Thomas Cook Currency Services, Inc., located at 1800 K Street, NW. The subject was unsuccessful in converting a check made payable to Thomas Cook and that he went to the Signet Bank in Washington, DC where he was arrested. At the time of his arrest he had on his person customer copies of three checks which he had obtained from the Signet Bank in Maryland that were made payable to three businesses entities in the District of Columbia for the purpose of converting those checks for his personal use. The total amount involved was $1,900,000.

## III.    COMMUNITY RESOURCES AND PAROLE RISK:

This information is not available, please obtain at the hearing.

JACKSON.197                                                      Page 2 of

## IV.    SALIENT FACTOR SCORE:

A =    0       Subject has five or more prior conviction(s).

    1.    7/19/71:  Forgery and Uttering - 2 years suspended and placed on 2 years probation.

    2.    9/15/72:  Unauthorized Use of a Motor Vehicle - convicted under YCA.

    3.    9/11/73:  Possession of Stolen Mail, Forgery and Uttering - 60 days plus 6 years YCA; paroled 11/21/74.

    4.    3/22/74:  Possession of Stolen Property and Uttering US Treasury Check - 4-6 years undetermined YCA; paroled 11/21/74.

    5.    7/25/75:  Uttering, Forgery, False Pretenses - 5-15 years; paroled 3/1/83.

    6.    4/20/85:  Grand Larceny and Bad Checks - 2 years custody; released on appeal bond 8/16/86, bond revoked on 10/2/86 and Bench Warrant remained outstanding.

    7.    7/16/84:  Grand Larceny and Petty Larceny - total sentence 13 years; released on appeal bond on 6/16/86 and absconded; bond revoked 10/2/86.

    8.    5/26/88:  Assault on a US Officer - 5 months custody.

    9.    7/21/87:  Bank Fraud (two counts) - 6 years custody.

    10.    1983:  Uttering and Forgery - 2-6 years.

    11.    Bail Reform Act - 4 months to 1 year consecutive; 8/26/94 paroled.

B =    0       Subject has five prior commitments of more than 30 days that were imposed prior to the last overt act of the current offense (see dispositions listed above).

C =    1       Subject was 43 years old at the commencement of the parole violation behavior.  Subject has five prior commitments.

D =    0       Subject was last released from a countable commitment less than 3 years prior to the current offense.  Date of last release: (8/26/94).

E =    0       Subject is a parole status violator.

F =    1       Subject was over 41 years of age or more at the commencement of the current offense.

    2.    **TOTAL SCORE**

JACKSON.197                                                      Page 3 of

## V.    RISK:

The subject is indeed considered a more serious risk than reflected by the 2 SFS due to his long term propensity to commit fraudulent acts.  The subject's crimes involves rather sophisticated method of operation coupled with a career criminal status, the subject does appear to impose a more serious risk than reflected by the 2 SFS.

## VI. EVALUATION:

The Parole Violation Behavior is rated as Category Six severity because it involved fraud of more than $1,000,000 but not more than $5,000,000 and assault on police officers.  The reparole guideline range is 78-100 months.

It's possible that the offense severity Category could be a Seven based on multiple separate offenses.  However, the pre-assessor only rated it as a Six because there were no details concerning the extent of the assault on the officers at the time that the subject was arrested on 8/16/95.

Since the subject has a new conviction this in turn will modify the full term date to 1/17/2008 and give him an MR date of approximately 4/17/2005.

It appears that the subject has been in continuous custody since 2/9/96 when his bond status was revoked and he was held without bond as of 2/9/96.  When the subject was initially arrested on 8/16/95 it appears that he made a $800,000 cash bond or placed on the $50,000 surety bond on 8/18/95.

However, the Bureau of Prison BP-5 reflected that the subject was given jail credit as of 8/16/95 through 4/29/96.  This will need to be checked at the hearing for the purpose of this review.  The examiner gave the subject credit for 45 months in custody as of 2/9/96.


PAH
November 10, 1999

<u>Declaration of Rockne Chickinell</u>

I, Rockne Chickinell, declare as follows:

I am the General Counsel of the United States Parole Commission, 5550 Friendship

Blvd., Chevy Chase, Maryland 20815. On May 21, 2007, I listened to a copy of the tape

recording of a revocation hearing held for Ainsworth Jackson, Register Number 19728-101 on

April 28, 2005, and find as follows.

After the discussion of the violation charges with Mr. Jackson and his attorney, Hearing

Examiner Casey Skvorc evaluated Mr. Jackson's case under the Parole Commission's paroling

policy guidelines at 28 C.F.R. §§2.20 and 2.21. In making this evaluation, Hearing Examiner

Skvorc discussed with Mr. Jackson and his attorney the calculation of the parolee's salient factor

score, an actuarial device that focuses on the parolee's criminal history to assess the risk of future

parole violation if the parolee is again released. In this discussion the hearing examiner listed the

12 prior convictions incurred by Mr. Jackson, and then concluded that the parolee had 12 prior

convictions and 6 prior incarcerations. Hearing Examiner Skvorc then discussed the remaining

items of the score and concluded that his calculations resulted in a total salient factor score of 2

and asked whether there was agreement on the score. Mr. Jackson's attorney acknowledged that

there was agreement with the score. In this discussion, neither Mr. Jackson nor his attorney

raised any concern about the accuracy of the number of prior convictions and incarcerations

noted by the hearing examiner.



EXHIBIT
31

Under penalty of perjury, I declare that the above statements are true.


Dated: ___5-21-07___          Signature: _Rochne Chickwell_

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AINSWORTH JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 07-203 (RWR)** |
| | ) | |
| **BUREAU OF PRISONS, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## <u>ORDER</u>

**UPON CONSIDERATION** of defendants' motion to dismiss, or in the alternative , for

summary judgment, plaintiff's opposition, and defendants' reply, it is hereby **ORDERED** that

the motion is **GRANTED**, and that plaintiff's complaint is dismissed with prejudice.


_____
UNITED STATES DISTRICT JUDGE

Dated: _____, 2007